this is United States of America versus on behalf of mr. Burgess who is the appellant in this case can the court hear me all right yes we can perfect now I'm assuming other counsels there because we can't see him right now I guess he'll okay all right good I would like to reserve three minutes for Mr. Burgess has registered an appeal of both his conviction and sentence in this case we've raised four issues on appeal a Miranda violation a violation of the jury service and selection act a challenge to his 924 C conviction and a challenge to the substantive reasonableness of his sentence I'll start off briefly with the Miranda issue in this case the district court found that one of mr. Burgess's confessions was suppressible as protected by the priest penitent privilege but yet declined to suppress two subsequent conversations with law enforcement finding that mr. Burgess was not in custody at the time it's our position that mr. Burgess was in fact in custody and he was interrogated within the meaning of Miranda and as a result the two subsequent confessions should be suppressed counsel let me ask you this of course he's in custody because he's in prison right so how though but he asked for the meeting he initiates the meeting to confess to a crime and so it's you can't just say because he's in prison that he's that doesn't just answer the custodial part are you just anyone that wants to confess when they're in prison is therefore always in custody no in fact your honor the Supreme Court has been quite explicit in house versus fields that it declined to adopt a per se rule of that nature rather in house versus fields the Supreme Court indicated that we have to look at a variety of criteria and evaluate those criteria under an umbrella or a framework that really focuses on the custodial portion of this of an individual's incarceration for example typically we don't have that bright line rule because someone who's being interrogated in custody is in their home institution they know that their sentence cannot be affected by their conversations with law enforcement but in this case it's actually quite different certainly Mr. Burgess asked for that first meeting with the pastor but in fact it was the pastor who subsequently notified law enforcement to come into that second and to that third meeting and when you look at the house decision the Supreme Court really said the fundamental or the key factor that we have to consider in deciding whether someone who's incarcerated is in custody for Miranda purposes is whether that person is told that they're free to leave and in this case Mr. Burgess as the record reflects was never once told that he was free to end the conversations and in fact it wasn't his home institution so he didn't suffer from that feeling of being in a familiar environment rather Mr. Burgess had just been brought to a separate institution as a result of a re-sentencing and in fact it's that re-sentencing that likewise rendered him in custody for Miranda purposes because Mr. Burgess was under the impression that if he cooperated with law enforcement that maybe his sentence would be even further reduced in fact the district judge who performed that re-sentencing explicitly said I look kindly upon people who help the government if you're full and forthcoming with all the information you know I hope to see you here again leaving open the possibility for a re-sentence. So the factors that Howe has asked the court to consider simply aren't present here. Judge Pius is trying to ask you a question we're not having I'm sorry that's okay no that's okay it's hard because you're not watching we're not watching each other live but that's all right I understand it's this is pretty good though so I I'm troubled but the difficulty I have with your argument on the Miranda issue is that you know bottom I thought the district court said basically he just volunteered the information that was it he had tremendous guilt about what had happened and he wanted to cleanse his soul so to speak and he wanted to fess up to what happened and he wanted to do it with law enforcement officials what was wrong with that that's what the judge that's what the district court judge said but even assuming a statement is voluntary if an individual is in custody and subject to interrogation the protections of Miranda still apply so the court we can accept that that conclusion by the court and say yes he wanted to cleanse his soul however the Supreme Court has told us that when we have a person in custody and they're being interrogated we must provide them with the Miranda with the Miranda warnings counsel when you're saying in custody and interrogated as Judge Callahan mentioned he's in custody first of all and I think there's a distinction that can be drawn unless you can tell me why it shouldn't be then a person who is arrested for a specific crime taken to an institution and then interrogated by law enforcement that didn't occur at least initially he asked to speak to a person who really isn't my recollections he wasn't on ordained minister but he wanted to speak to the person who gave him spiritual counseling and they did it in the law library that seems to be a far cry from being a custodial interrogation that Miranda or even the house case versus fields even talked about how is that an interrogation by law enforcement for a person who is in custody he was living where he was supposed to be and a law library is definitely not an interrogation room so how do you how do we get going from that first standpoint well the Supreme Court has defined interrogation specifically in Rhode Island v. Innis as any questions or things analogous to questions that are reasonably likely to elicit an incriminating response so I understand the court's position that this is very different than someone who's arrested on the street and brought into a police station but I think the Miranda decision is quite clear that we're looking at only two criteria whether the person was in custody for purposes of Miranda and whether the person was interrogated and interrogated means those questions were asked so even though he volunteered to go in initially again the second and the third meetings with law enforcement were initiated by law enforcement and a reasonable person would understand that I think whether it was custodial is whether under the objective analysis a reasonable person would have felt that they were free to leave and that there was no danger of coercion there the last interview I guess it was in Colorado it's our position that the district court made no findings with respect to that so we had asked for a remand with the Missouri v. Siebert issue and again I think because there were no factual findings made it would require a remand that was several days later or about a week later wasn't it and he it was a different location and he got Miranda warnings correct he did and there was a different officer right it was a different officer doing the interview but yet the same officer with whom the prior two officers consulted when going in to interrogate mr. Burgess why don't you address the grand jury issue for a moment certainly our second claim is whether is that mr. Burgess is right to a fair representation of his jury was here the court found that under the Durand v. Missouri that mr. Burgess had established that there was a distinctive group that was underrepresented on his grand jury panel but the court declined to find that there was systemic exclusion and it's our position that the evidence in the record demonstrates that it's the jury selection system in this district that really results in the underrepresentation of the Latinos in the jury pool here specifically we would like the supplemental draw procedure that our district plan uses the supplemental draw once we have a master wheel of 50,000 then randomly 20,000 names are selected and to send out jury qualification questionnaires once a qualification questionnaire is sent out if that person doesn't respond the court clerk tries again if the person doesn't respond they try again in the same zip code if that person doesn't respond they do another person that same zip code and if that person doesn't respond they move on to a different zip code randomness is defined by the fact that each individual in the population is equally likely to be chosen each time and by using a supplemental draw procedure that doesn't in fact draw from the whole 20,000 I'm sorry from the greater wheel but rather focuses on drawing from an individual zip code we're skewing the question you described the system and then there was this expert Beretta or something right and the suggestion appears to have been that a further questionnaire should have been sent to the same zip code in which the non-responding juror resides because more Latinos reside in some zip codes than others but it does not appear that Beretta offered any evidence to support his statistical analysis or show that limiting additional mailings to the non-responding jurors zip code would increase the participation of Latinos more than going back to the 20,000 person sample so I just questioned whether you know it it seems that Beretta's testimony seems similar to the type of evidence that the Ninth Circuit found insufficient in the Randolph case I don't disagree I think that judge I don't disagree that the expert Beretta didn't offer concrete evidence his evidence was after doing the statistical analysis the anomaly was so great that it could not have possibly been a result of randomness and therefore it had to be a result of system of the system in general because this statistical possibility was simply not there the your argument you just gave a moment ago seems to be it differs from what I understood Beretta's testimony to be which was that if the supplement after the supplemental draw the second draw that they should continue to go back to the same zip code because they're more likely to get a Latino from the zip code from where the person didn't respond then by going to the full then going to the full district and drawing again did I and your argument now is suggesting that they need to go to the full they their draw has to be district wide and not from the zip code and that and that is correct because I think that this district court addressed the concern with Beretta's position quite candidly which is you're actually screwing there you're you know you're skewing the randomness if you try to go after an individual with similar or same characteristics and so therefore you're not really saying just generally that the makeup of the zip code not that not that he wasn't advocating that that you need to replace the person who didn't respond with another Latino but that your chances of drawing a Latino are greater if you draw from the zip code that's what I understood him to be saying and that's correct but then as Judge Callahan pointed out he didn't offer and he wasn't able to provide any evidence that that would be the case rather just generally when you look at the expert report that he issued he talked about the importance of randomness in which you have to give each individual in the population an equal chance of being selected so I think that the argument that counsel made in front of the district court is slightly different than the argument here on appeal given the information in the record okay what about the 924 just why don't you we should would you agree that we ought to hold the 9 the the 924 C issue in light of the Maya and what's the other one our own court has a case yeah your honor I don't think that a stay would be appropriate in light of your court has big a pending which is pending for quite some time now and that raises the identical issue right the only difference between mr. Burgess's claim and the claim raised in big a is that it's my understanding that in big a the appellant did not challenge whether or not second-degree murder can be committed with de minimis force the argument in big a centered around just the mens rea so in that sense we have put forth an argument that big a hasn't put forth I don't think a stay pending to Maya would be appropriate simply because given the recklessness mens rea of second-degree murder the court need not reach the constitutionality of the residual clause of 924 C okay let's hear from the government thank you may please the court Tom Hamlin a prayer for the United States first I wanted to thank the court for accommodating us and allowing us to appear by BTC in light of all the weather conditions but jumping into the issues raised by Miss Guernsey we have four issues here the first issue being whether or not mr. Burgess is in custody at the time that he made the statements to officer Kennedy it's the government's position that based upon 9th Circuit precedent that mr. Burgess was not in custody this court has determined there are five factors to look at to determine whether or not an individual is in custody the first one is the degree of pressure applied by the officers the physical characteristics of the room where the questioning took place the degree of pressure applied in regards to detaining the individual the duration of detention and the extent to which a person was confronted with evidence of guilt in the instant cases the court is aware from the facts mr. Burgess was involved in this murder time passed he was then picked up on a drug offense in another state mr. Burgess was sentenced to 188 months and then resentenced to 120 months during that time mr. Burgess had a what I would call a religious awakening he on his own volition decided he wanted to come forward to law enforcement he wanted to in his own words atone for his sins and confess his crime he sought out the chaplain he talked to chaplain Stoll the chaplain was clear with him do you want to confess to me or do you want to confess to the proper authorities mr. Burgess advised that he wanted to talk to the proper authorities it was after meeting with the chaplain a second time that officer Kennedy was brought in so this is the first time that mr. Burgess has met with a law enforcement officer at that time officer Kennedy certainly did not confront the defendant with evidence of guilt because he had no information whatsoever about this murder that occurred in Yakima Washington again mr. Burgess was in another location and officer Kennedy only knew that mr. Burgess wanted to confess to a murder in regards to the degree of pressure applied the record is clear there was no pressure applied again the officer was only present because he was there at mr. Burgess's behest in regards to the physical characteristics of the room where the interview took place this was the library it was also described as a big room and a room where church services were held therefore we believe that this factor also cuts on behalf of the government the last factor is the language used by the officers that summons the individual and here again this was mr. Burgess who reached out to law enforcement to ask them to come to his jail to interview him because he wanted to confess to a murder therefore it's the government's position that mr. Burgess was not in custody in regards to this section is the second issue the defendant raised an issue regarding the jury service and Selection Act the judge in this case determined that Latinos are distinctive group in the community and that the representation was not fair and reasonable in relation to the numbers of the person in the community so then we're left with the third factor which the defendant was required to make a prima facie case and that is to show that the under representation was due to systematic exclusion of the group in the case those factors came from the Durant test in the Durant test in that case they found systematic exclusion because women who were a distinctive group were systematically excluded from jury service in the instant case in our district plan our district goes out of its way to attempt to bring everyone into this process as miss Guernsey had stated that here the master wheel contains 55,000 names the court then uses a nationally recognized system to reduce that 55,000 to 20,000 names the clerk then sends out a questionnaire to a person if the person doesn't respond they then send the second let me ask you this I mean it's accepting that there was a statistically different a significant under representation of Latinos on the grand jury what more did mr. Burgess have to show to have his indictment dismissed causation he had no evidence whatsoever of causation as to why is this occurring to show that the prima facie case showing that there's systematic exclusion so that this exclusion is caused by the system in this case when professor Beretta was asked about that he simply did no research whatsoever to determine causation he simply looked at numbers and said hey there's under representation and I thought he said at the end of his testimony right it's sort of at the end right the last part of his testimony when he was at when when he was asked somebody asked him a general question I can't remember who it was he he zeroed in on the on the supplemental draw and said I thought he said I thought I thought he I thought he said the problem was that you needed to draw from the same zip code I mean they try the clerk's office tries to reach out to that zip code on four separate times I don't know what else a court could do in regards to a jury service and selection plan so wait so hold on a minute are you telling me that the supplemental draws are all from the same the same zip code what I'm saying is that the first two the first draw is from a zip code the second draw is to that zip code the third draw is to that zip code and the fourth draws to that zip code so the clerk's office has attempted to make contact with an individual in that zip code four separate times is that in the record there was a somebody from the clerk's office who testified today is that what you just said is that documented in the record I'm sorry your honor would have been Jessica Harmon and I believe she was a witness in this case in regards to how the jury service and selection act how the names are drawn okay all right answer the court's question yes the other thing that I wanted to point out which I thought was interesting was looking at the numbers that were reduced here the defendants arguing systematic exclusion it seems bizarre that the master wheel over represents Latinos Latinos make up approximately 17% of the district yet on the master wheel they're over 26% so I thought that was an interesting fact to point out in regards to systematic exclusion miss Guernsey did not have an opportunity to address the 924 C issue did the court want me to address that issue no I mean would you agree that we should hold it would you not I do your honor most of it most of mr. Burgess's brief is based upon the to my opinion and in light of the the status of that case I do believe it would be appropriate your honor if there are no other questions for me then I will sit down I don't I don't have anything further have anything judge Englund I do not have anything else thank you okay Thank You counsel thank you miss Guernsey your honor thank you I just have two brief points in response the first is with respect to the court's question about the supplemental draw procedure there are when initial questionnaire goes out if there's a non response the person on the second time they don't hear someone they reach out to a different person in that same zip code and if they don't hear from that person they will again reach out a second time to that person before moving on to a different zip code so they do try for attempts with two different people in the same zip code and that's at er I'm sorry it's er 646 okay with respect to the government's just mention of the master wheel over representing Latinos I think that the master wheel here is the comparison of the master wheel to the Hispanic or Latino community here in in the Division B is based upon American Community Survey estimates of population from 2012 I think that the number of Latinos and Hispanics on the master wheel is much higher it's 26% because as is in the record the Hispanic and Latino community is increasing and in Division B and so that could explain that anomaly and furthermore we know that the there the Latino and Hispanic community are not being disqualified at a higher rate than the non Hispanic and Latino community so that's all I really had to say all right thank you very much Thank You council thank you matter is submitted and that ends up that ends our session
judges: Paez, Callahan, England